**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| E.Z., a minor, by and through his parents, JEFF ZAKER and ANTONIETTE ZAKER, and individually,<br><br>Plaintiff,<br><br>     v.<br><br>JSKLD HOSPITALITY ENTERPRISE, LLC, SAP HOTELS, LLC, d/b/a SAP HOSPITALITY MANAGEMENT, and HOCKEY TIME PRODUCTIONS, INC.,<br><br>     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 2:23-cv-835-RJC |

## MEMORANDUM OPINION

Robert J. Colville, United States District Judge

Before the Court is a Motion for Judgment on the Pleadings (ECF No. 72) filed by

Defendant Hockey Time Productions, Inc. ("Hockey Time"). Hockey Time moves for judgment

in its favor pursuant to Fed. R. Civ. P. 12(c) as to the negligence claim set forth against it by

Plaintiffs, E.Z., Jeff Zaker, and Antoniette Zaker (collectively, "Plaintiffs"), in their operative First

Amended Complaint (ECF No. 50) (the "Complaint"), as well as the crossclaims for contribution

and indemnity asserted against Hockey Time by Defendants JSKLD Hospitality Enterprise, LLC

("JSKLD") and SAP Hotels, LLC, d/b/a SAP Hospitality Management ("SAP"), each of which

incorporates and relies on the allegations set forth in Plaintiffs' Complaint, *see* ECF Nos. 58, 59,

70, and 71 at ¶¶ 66-68. Plaintiffs oppose Hockey Time's Motion for Judgment on the Pleadings.

Neither JSKLD nor SAP has filed an opposition to the Motion, and the deadline for filing

opposition briefing has long since passed.  Accordingly, the Court considers Hockey Time's Motion to be fully briefed and partially uncontested as to JSKLD's and SAP's crossclaims, and further finds that the Motion is ripe for disposition.  The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a).

## I.    Factual Background & Procedural History

The claims in this case arise out of an incident wherein E.Z. allegedly sustained an injury while he and his father, Jeff Zaker, stayed at a Holiday Inn Express (the "Hotel") in Harmarville, Pennsylvania.  ECF No. 50 at ¶ 1.  In their Complaint, Plaintiffs assert two separate counts.  Count I is a premises liability negligence claim against JSKLD, who owned the Hotel and the property on which the Hotel was located and who allegedly co-managed the Hotel and the underlying property with SAP, *id.* at ¶ 4; ECF No. 58 at ¶4, and SAP, a hospitality management company who managed (or allegedly co-managed) the operations of the Hotel on the date in question, ECF No. 50 ¶ 6; ECF No. 59 at ¶ 6.  Count II is a negligence claim against Hockey Time, a corporation that organizes and allegedly manages ice hockey tournaments across the United States for both adults and minors.  ECF No. 50 at ¶ 13; ECF No. 51 at ¶ 13.

At the time E.Z. was injured, he and his father were staying at the Hotel during the weekend of October 7, 2022 to allow for E.Z.'s participation in an ice hockey tournament in Harmarville that was organized and allegedly managed by Hockey Time.  ECF No. 50 at ¶¶ 17-18, ECF No. 50; ECF No. 51 at ¶ 18.  Plaintiffs allege that, at all times relevant herein, Hockey Time required out-of-town hockey tournament participants (defined as having a home rink that is greater than 75 miles from the primary tournament arena) such as E.Z. and his parents to reserve an approved hotel room from a list on Hockey Time's website.  ECF No. 50 at ¶¶ 19-20.  Out-of-town participants were required to pay the listed tournament rate and reserve the room through Hockey Time.  *Id.*

At all relevant times, Hockey Time's website provided that procurement of a hotel room through any other method, "including use of hotel reward points to secure accommodations at a Hockey Time[] or other hotel," was not permitted and would result in expulsion from the hockey tournament without the refund of registration fees. *Id*.; ECF No. 51 at ¶¶ 19-20. Plaintiffs allege that Hockey Time did not inspect or assess the Hotel prior to listing the Hotel on Hockey Time's approved list of hotels, and that, had Hockey Time inspected and assessed the Hotel, it would have discovered that the premises were unsafe, as discussed below. ECF No. 50 at ¶¶ 21-22.

Turning to the incident that allegedly resulted in injury to E.Z., Plaintiffs allege as follows in the Complaint:

E.Z. was injured on October 8, 2022 when he collided with, presumably by walking or running into, a "gag" "Slow Duck Crossing" sign that was installed in a strip of grass near the drop off/pick up lane of the Hotel that was located between the front parking lot and the front entrance of the Hotel. ECF No. 50 at ¶¶ 1; 29; 33. This area of the Hotel property was heavily traveled given its location. *Id*. at 33. The sign was made of metal, had sharp edges, and was attached to a metal pole. *Id*. From the ground to the top of the sign, the sign measured approximately fifty-nine inches tall. *Id*. The sign bore no reflective tape or illumination device so that it could be seen at night, and the area where the sign was located was not illuminated. *Id*. at ¶ 34. Plaintiffs aver that the use and placement of the sign at issue did not conform to industry standards, guidelines, and/or customs. *Id*. at ¶ 33.

The Hotel is not located in the immediate vicinity of a habitat for wild ducks to the extent that ducks would cross the Hotel entranceway with frequency. ECF No. 50 at ¶ 23. Plaintiffs aver that the sign was purchased and installed by a JSKLD and/or SAP agent for purposes of humor for staff and/or patrons. *Id*. at ¶ 25. Accordingly, Plaintiffs further aver:

> The sign itself had no functional purpose, as the drop off/pick up lane at the [Hotel] was not an actual duck crossing.  Traffic did not actually need to slow for ducks to cross from the parking lot to the hotel.  Instead, the [Hotel] staff, who lured ducks onto the hotel property with food scraps, installed the sign as a gag prop.

*Id.* at ¶ 30.[1]  Plaintiffs allege that E.Z. suffered injury as a result of his collision with the sign, and that Plaintiffs have suffered physical and emotional harm as a result of the incident.  *Id.* at ¶ 37.

By way of procedural background, the pleadings closed in this matter on November 17, 2023, with the filing of Hockey Time's Replies (ECF Nos. 70 and 71) to the crossclaims filed by JSKLD and SAP.  Hockey Time has asserted crossclaims for contribution and/or indemnity against JSKLD and SAP, and JSKLD and SAP have each filed similar crossclaims against Hockey Time.  Each Defendant has asserted a negligence counterclaim against Plaintiffs Jeff and Antoinette Zaker seeking contribution and/or indemnity.  Earlier this year, the parties stipulated to the dismissal without prejudice of former defendants InterContinental Hotel Group Resources, LLC and Holiday Hospitality Franchising, LLC.  *See* ECF No. 88.

Hockey Time filed its Motion for Judgment on the Pleadings on December 12, 2023.  The relevant briefing includes: (1) a Brief in Support (ECF No. 73), filed along with the Motion for Judgment on the Pleadings; (2) Plaintiffs' Brief in Opposition (ECF No. 80), filed February 21, 2024; and Hockey Time's Reply (ECF No. 81), filed February 23, 2024.

## II.    Legal Standard

"The standard for deciding a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c) is not materially different from the standard for deciding a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Zion v. Nassan*, 283 F.R.D.

---

[1] It bears noting that the assertion that Hotel staff lured ducks to the Hotel with food tends to indicate that the Hotel *was* located within the vicinity of a habitat for wild ducks.  That said, Plaintiffs' allegation seemingly avers that the Hotel was not *so close* to such a habitat that ducks would cross the entranceway *at a rate warranting a sign*.  As the Court is required, it will, of course, construe Plaintiffs' allegations in a light most favorable to Plaintiffs.  The Court merely notes the same for clarity's sake.

247, 254 (W.D. Pa. 2012); *see Harleysville INS. Co. of New York v. Cerciello*, No. 3:08-CV-2060, 2010 WL 11534317, at *2 (M.D. Pa. 2010) ("The standard of review used for a motion for judgment on the pleadings is substantively identical to that of a motion to dismiss."); *see also Minnesota Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x. 143, 147 (3d Cir. 2011). Either motion may be used to seek the dismissal of a complaint based on a plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 12(h)(2)(B). The only difference between the two motions is that a Rule 12(b) motion must be made before a "responsive pleading" is filed, whereas a Rule 12(c) motion can be made "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(b); Fed. R. Civ. P. 12(c); *Cerciello*, 2010 WL 11534317, at *2. "A court presented with a motion for judgment on the pleadings must consider the plaintiff's complaint, the defendant's answer, and any written instruments or exhibits attached to the pleadings." *Anthony v. Torrance State Hosp.*, No. CV 3:16-29, 2016 WL 4581350, at *1 (W.D. Pa. 2016) (citing *Perelman v. Perelman*, 919 F.Supp.2d 512, 521 (E.D. Pa. 2013)).

The Court "accept[s] as true all allegations in plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and [the court] construes them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). The motion will be granted if the plaintiff has not articulated enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 557). It is not

enough for a plaintiff to allege mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "The plausibility determination is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786-87 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679)).

## III.    Discussion

As noted, Plaintiffs have asserted claims for negligence against each of the Defendants. The elements of a negligence claim are duty, breach, causation, and damages. *Farabaugh v. Pennsylvania Tpk. Comm'n*, 911 A.2d 1264, 1272 (Pa. 2006). Whether a duty of care exists under the specific facts of a case is typically a question of law for the Court to resolve. *Id.* at 1273.

Plaintiffs' theory of liability against JSKLD and SAP is plain and obvious: that these entities, which allegedly owned and/or managed the Hotel and the premises on which the Hotel is located, owed a duty to E.Z. to "maintain the Hotel premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended" because E.Z. was a business invitee. ECF No. 50 at ¶¶ 41-42. Plaintiffs assert that these entities had an affirmative duty to protect E.Z. not only against known dangers, but also against dangers which might be discovered by JSKLD or SAP with reasonable care, and that they breached that duty through their installation of the allegedly hazardous "Slow Duck Crossing" sign for improper purposes and their failure to discover and eliminate the risks posed by the sign. *Id.* at ¶¶ 44-54.

"[A] business invitee is a person who is on the land by invitation of the landowner to conduct business on the property." *Derito v. Walmart Stores E., L.P.*, No. 2:19-CV-737, 2020 WL 7059551, at *3 (W.D. Pa. Dec. 2, 2020). "A landowner owes the highest duty of care to any invitee on the property." *Id.* A business owner owes invitees a "duty of maintaining the premises in a

reasonably safe condition . . . for the purposes for which the invitation to customers [is] extended." *Larkin v. Super Fresh Food Markets, Inc.*, 291 Fed. App'x 483, 484 (3d Cir. 2008) (quoting *Regelski v. F.W. Woolworth Co. of Pa.*, 225 A.2d 561, 562 (1967)).   "Pennsylvania courts have adopted Section 343 of the Restatement (Second) of Torts for determining liability when an invitee is injured on the premises."  *Derito*, 2020 WL 7059551, at *3.  A business breaches its duty to an invitee under Pennsylvania law if the business:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitee, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

*Carrender v. Fitterer,* 503 Pa. 178, 469 A.2d 120, 123 (1983) (quoting Restatement (Second) of Torts § 343 (1965)).

Plaintiffs' theory of liability against Hockey Time is a bit more difficult to discern.  While Plaintiffs argue that they have asserted only "general negligence" against Hockey Time for its alleged failure to take reasonable care to ensure that "its hockey tournament requirements were safe for its minor participants," the factual allegations and legal averments in Plaintiffs' Complaint and Brief make clear that Plaintiffs intend to argue that Hockey Time breached this duty through its failure to visit the Hotel, inspect the premises, and assess the safety of the Hotel and premises. The Complaint speaks to a duty owed by a business owner to a business invitee, not an independent third-party with no control over the property.  In light of the same, and as discussed in more detail below, the Court agrees with Hockey Time that what Plaintiffs have attempted to accomplish by way of their negligence claim against Hockey Time is to expand premises liability to an entity that has no actual control over the Hotel or the property on which the Hotel is located.

In attempting to place such a duty on Hockey Time, Plaintiffs rely on Hockey Time's undeniably plain and restrictive requirement that all tournament attendees stay at, and pay the Hockey Time rate for, a hotel listed on Hockey Time's approved list. According to Plaintiffs, because Hockey Time picks the approved hotels, it also has a duty to vet those hotels for safety. *See* ECF No. 80 at 4. While Plaintiffs present an interesting argument, the Court finds that this theory of liability fails at the first prong of the negligence analysis: duty.

Quite simply, and even construing the facts in a light most favorable to Plaintiffs, this case is unquestionably a premises liability case. As alleged, E.Z. chose to participate in a hockey tournament that required him to stay at a hotel listed on Hockey Time's website. Plaintiffs assert that Hockey Time thus "owed a duty to its hockey tournament participants (including the minor Plaintiff) and their family members traveling with them to make sure that the hotel lodgings Hockey Time Productions required participants to reserve *were safe for the participants and their families*." ECF No. 50 at ¶ 63 (emphasis added). This very broadly defined duty would mean that Hockey Time, who organizes hockey tournaments that do not take place at hotels and who had no control over the Hotel or Hotel premises, had an affirmative duty to inspect the Hotel itself and the entire Hotel premises ahead of its hockey tournament to ascertain whether a single sign on the property was unsafe or not up to industry standards, as well as, presumably, to detect any other potential nonobvious hazard.

At the risk of hyperbole, such a duty might mean that Hockey Time, again, a hockey tournament organizer with no oversight of the Hotel, had a duty to inspect the kitchen for cleanliness, lest a hockey tournament participant become ill, walk every hallway to check for upturned rug corners, or examine every sidewalk for cracks to avoid tripping hazards. Such a duty might also require more than one visit to allow for inspection of daytime and nighttime safety

issues.  As a practical matter, it is very unlikely that any hotel or business would even allow the access that would be required under the duty asserted by Plaintiffs to an entity such as Hockey Time.

In its Brief in Support, Hockey Time points to the potential impracticality of imposing such a duty on a hockey tournament organizer with no control over the Hotel:

> The consequences of imposing a duty upon a tournament organizer are far reaching and improperly burdensome.  Under Plaintiffs' theory, Hockey Time would be required to physically inspect the inside of the hotel, the lobby, the restaurants, and the rooms as well as the grounds outside, study industry standards, and walk the property with a measuring tape to check whether the height and material of fixtures, personalty, obstacles, and signage are in good order and properly illuminated. Under their claim, the same exercise of inspecting the premises would be required during the night to ensure the grounds and objects were property illuminated and visible.

ECF No. 73 at 11-12.  Plaintiffs tacitly acknowledge the potential far reach of the duty they seek to impose, but assert that, because they have not alleged a failure to perform all of the potential requirements listed by Hockey Time in the above-quoted paragraph, the duty is not improperly burdensome with respect to an entity like Hockey Time.  ECF No. 80 at 5.  The Court disagrees. The duty Plaintiffs seek to impose, i.e., inspect the Hotel for safety issues, would undoubtedly encompass the requirements discussed by both Hockey Time and this Court.

The Court notes the obvious, a hotel patron is already owed the "highest duty of care" from hotel owners/managers to maintain the premises in a reasonably safe condition.  Such entities breach this duty when they, inter alia, know or by the exercise of reasonable care would discover an unsafe condition and fail to exercise reasonable care to protect the invitee.  Again, the duty Plaintiffs seek to impose on Hockey Time, i.e., inspect hotels it lists on its website for potentially dangerous conditions such as a "Slow Duck Crossing" sign, is entirely duplicative of the

owner's/manager's duty.   Hockey Time is correct that Plaintiffs have attempted to expand premises liability to an entity that has no real connection to or control over the premises.

To be clear, and as noted by Hockey Time, Plaintiffs will not be out of court as a result of this decision.  While the Court finds that Hockey Time is entitled to judgment in its favor because Plaintiffs cannot establish a duty owed by Hockey Time to E.Z. on these facts, Plaintiffs' claims against Defendants JSKLD and SAP, who are alleged to be affiliated with the Hotel and to have control over the property, will remain at this juncture.   Consistent with the case law cited above, those business entities might have owed E.Z. a duty to protect him from dangerous conditions on Hotel property, though the Court notes that these Defendants have raised multiple affirmative defenses and have asserted counterclaims against the Parent Defendants.   Premises liability is concerned with the relationship between the individual or entity in control of the business/premises and the business invitee, and Plaintiffs cannot impute a premises liability duty upon a third-party unaffiliated with the Hotel.   The same is simply unreasonable, and Plaintiffs cite to no case law or other authority supporting such a theory.   In short, Plaintiffs fail to allege facts sufficient to support a reasonable inference of liability as to Hockey Time.   While Plaintiffs seek discovery, their claim against Hockey Time unquestionably fails as a matter of law.

While the Court believes that the basic principles of tort law cited above render the Court's holding herein both warranted and obvious, the Court notes that each party has submitted a "novel duty" analysis under the Supreme Court of Pennsylvania's decision in *Althaus ex rel. Althaus v. Cohen*, 756 A.2d 1166, 1167 (Pa. 2000) in their briefing.   Accordingly, and while the Court's holding above addresses many, if not all of, these factors, the Court will perform a brief *Althaus* analysis herein.   *Althaus* provides:

> The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the

parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the overall public interest in the proposed solution.

*Id.* at 1169.

As to the relationship between the parties, the Court agrees with Hockey Time that, under the allegations in the Complaint, the parties entered into an arm's length business transaction wherein Hockey Time organized a hockey tournament and E.Z. voluntarily signed up for that tournament. Hockey Time certainly owed some duty with respect to the tournament itself. While it is true that Hockey Time required E.Z. to stay at an approved hotel in order to participate in the tournament, the Court does not find that this created the type of special relationship that would require Hockey Time to inspect the hotel it listed on its website for hazards such as the one alleged in this case.

With respect to social utility, the Court again agrees with Hockey Time that there is no social utility or benefit to making "Hockey Time responsible for inspecting the property to ensure safety," and that "imposing a duty under these circumstances improperly shifts the burden and duty of care from the actual owner or possessor of the premises." ECF No. 73 at 11. The risk at issue is that a hotel patron may be harmed by a nonobvious dangerous condition on Hotel premises. While it may be foreseeable to Hockey Time that a tournament participant who books a hotel room to participate in a tournament might be injured if such a dangerous condition exists, it is only because common sense dictates that, if a business owner fails in its duties to protect its patrons, a patron may be harmed. As discussed above, business owners already owe the highest duty of care to their invitees, and the Court agrees with Hockey Time that the "foreseeability of harm rests with the property owner/possessor" under the circumstances presented herein. ECF No. 73 at 11.

The consequences of imposing the duty proposed by Plaintiffs on a hockey tournament organizer are addressed above.  Imposing such a duty would be extremely burdensome and expand premises liability to an entity essentially unaffiliated with the Hotel and with no control over the Hotel or the premises on which the Hotel is located.   Finally, the Court agrees with Hockey Time that "the overall public interest . . . is served by having the premises owner or possessor, who owes the highest duty of care to business invitees, [be] responsible for inspection and maintenance of the premises to ensure the safety of hotel guests." *Id.* at 12.  Imposing such a duty on a third-party with no control of the premises is illogical, and, accordingly, unwarranted.

The *Althaus* factors weigh heavily in favor of finding that Hockey Time did not owe a duty to inspect and assess the Hotel for dangerous conditions under the circumstances in this case. Hockey Time's Motion will be granted.

## IV.    Conclusion

For the reasons discussed above, the Court will grant Hockey Time's Motion for Judgment on the Pleadings.  Plaintiffs' request for oral argument is denied. An appropriate Order of Court follows.

<div style="margin-left:50%">

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

</div>

DATED: March 14, 2025
cc: All counsel of record